UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NETTIE LEWIS,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )      Case No. 4:12CV323 FRB
                                       )
CAROLYN W. COLVIN, Acting              )
Commissioner of Social Security,[1]    )
                                       )
            Defendant.                 )

## MEMORANDUM AND ORDER

This cause is before the Court on plaintiff's appeal of an adverse determination by the Social Security Administration. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

## I.  Procedural History

On November 29, 2010, the Social Security Administration denied plaintiff Nettie Lewis's applications for Disability Insurance Benefits (DIB) filed August 26, 2010, pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., and for Supplemental Security Income (SSI) filed pursuant to Title XVI of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is therefore automatically substituted for former Commissioner Michael J. Astrue as defendant in this cause of action.

the Act, 42 U.S.C. §§ 1381, et seq.,[2] in which she claimed she became disabled on January 1, 2008.  (Tr. 132, 133, 134-40, 192-98.)[3]  Plaintiff subsequently amended her alleged onset date to August 17, 2010.  (Tr. 214-16.)  At plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on September 15, 2011, at which plaintiff and a vocational expert testified.  (Tr. 21-66.)  On November 25, 2011, the ALJ denied plaintiff's claims for benefits.  (Tr. 6-20.)  Plaintiff timely requested Appeals Council review of the ALJ's decision.  On January 17, 2012, the Appeals Council denied plaintiff's request to review the ALJ's decision.  (Tr. 1-3.)  The ALJ's decision is thus the final decision of the Commissioner.  42 U.S.C. § 405(g).

Upon review of the record and the claims raised by plaintiff on this appeal for judicial review, the undersigned finds that substantial evidence does not support the ALJ's decision to classify plaintiff as a "younger individual" at the time of her decision.  Because classification to a higher age category would result in a finding of "disabled," the matter should be remanded to

---

[2]Although the administrative transcript contains copies of the Social Security Administration's rulings on plaintiff's application for SSI benefits, the transcript does not contain a copy of the application for SSI benefits itself.

[3]Plaintiff previously filed applications for benefits which were denied by an Administrative Law Judge on August 10, 2010 (Tr. 112-31), for which the Appeals Council denied plaintiff's request for review (Tr. 142-45).  In the instant cause of action, plaintiff does not seek judicial review of the Commissioner's adverse decision regarding these applications.

the Commissioner for further proceedings.

## II.  Relevant Background

Plaintiff was born on January 10, 1962.  At the time of her alleged onset of disability, that is, August 17, 2010, plaintiff was forty-eight years of age.  At the time of the ALJ's decision in this cause, that is, November 25, 2011, plaintiff was forty-nine years of age and less than two months from attaining age fifty.

Plaintiff's Job History Report shows plaintiff to have worked as a dietary assistant in a nursing home from 1999 to 2001, as a school crossing guard from August 2001 to July 2002, and preparing meals in a nursing home from July 2002 to January 2008. (Tr. 223.)  At the administrative hearing held before the ALJ on September 15, 2011, vocational expert Barbara Meyers testified that such work was classified as unskilled.  (Tr. 59.)

Plaintiff completed the tenth grade in high school and has had no further education or vocational training.  (Tr. 29, 223.)

## III.  The ALJ's Decision

In her written decision dated November 25, 2011, the ALJ found that plaintiff met the insured status requirements of the Social Security Act on August 17, 2010, and continued to meet them through December 31, 2012.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of

disability, that is, since August 17, 2010.  The ALJ found plaintiff to have a severe combination of impairments consisting of major depressive disorder, obsessive compulsive disorder, diabetes mellitus, hypertension, obesity, mild scoliosis, fibroids, early degenerative disc disease, anemia, headaches, and poly-arthralgia, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1.  (Tr. 9-14.)

The ALJ determined plaintiff to have the residual functional capacity (RFC) to perform sedentary work in that she was "able to lift and carry up to 10 pounds occasionally; stand and walk 2 hours in an eight hour workday; sit 6 hours in an eight hour workday[.]"  (Tr. 14.)  The ALJ determined, however, that plaintiff could not perform the full range of sedentary work inasmuch as her ability to perform the requirements of such work "has been impeded by additional limitations" (Tr. 19) in that she "can only occasionally stoop, crouch, crawl, and kneel, she must avoid concentrated exposure to noise, vibration, moving and hazardous machinery, and she can never climb ramps, stairs, ropes, or scaffolds.  Further, that she can perform simple routine tasks." (Tr. 14.)  The ALJ determined plaintiff unable to perform her past relevant work.  (Tr. 18.)

Identifying plaintiff's vocational factors, and specifically, that plaintiff was a "younger individual" given her

- 4 -

age of forty-eight years on the alleged onset date of disability, that plaintiff had a limited education, and that the transferability of job skills was immaterial, the ALJ determined the Medical Vocational Guidelines to support a finding that plaintiff was not disabled. (Tr. 18.) Upon consideration of plaintiff's additional non-exertional limitations as set out in the RFC determination, the ALJ concluded that vocational expert testimony supported a finding that plaintiff could perform other work as it existed in the national economy, and specifically, work as a document preparer, circuit assembler, and table worker. The ALJ thus found plaintiff not to be under a disability from August 17, 2010, through the date of the decision. (Tr. 18-20.)

## IV.  Discussion

To be eligible for Social Security Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared

disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At the fourth step, the Commissioner determines the claimant's RFC and determines whether the claimant can perform her past relevant work. If so, the claimant is not disabled.  If the Commissioner finds that the claimant cannot do her past relevant work, the

- 6 -

Commissioner then proceeds to the fifth step of the evaluation process whereby she considers the claimant's RFC, together with the claimant's vocational factors (age, education and work experience), and determines if the claimant can make an adjustment to other work.  If the claimant can make such an adjustment, the claimant is found not to be disabled.  If the Commissioner finds the claimant unable to perform such other work, the claimant is determined to be disabled and becomes entitled to disability benefits.

At Step 5 of the evaluation process here, the ALJ determined that plaintiff was not disabled inasmuch as application of the required vocational factors, when coupled with plaintiff's RFC and vocational expert testimony, demonstrated that plaintiff was able to perform work as it exists in significant numbers in the national economy.  With respect to the vocational factor of age, the ALJ classified plaintiff as a "younger individual" inasmuch as plaintiff "was 48 years old . . . on the alleged disability onset date[.]"  (Tr. 18.)  For the following reasons, the ALJ erred in her consideration of plaintiff's age as a vocational factor and the matter must be remanded for proper consideration.

At Step 5 of the sequential analysis, the burden shifts to the Commissioner to show that the claimant has the physical RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience.

- 7 -

Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir. 2012).  The Commissioner may refer to the Medical-Vocational Guidelines ("Guidelines") to meet this burden.  See Pearsall, 274 F.3d at 1219.

The Guidelines are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability.  20 C.F.R. Pt. 404, Subpt. P, App. 2; McCoy v. Astrue, 648 F.3d 605, 613 (8th Cir. 2011).  The Guidelines take into account only exertional limitations and certain demographic features; they do not account for non-exertional limitations. McCoy, 648 F.3d at 613.  "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a).  In other words, if the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Guidelines, then the ALJ must reach the conclusion directed by the relevant Guideline, either "disabled" or "not disabled."  Phillips, 671 F.3d at 702.

In this cause, the ALJ found plaintiff able to perform sedentary work, to be a younger individual, and to have a limited education.  Under Rule 201.18 of the Guidelines, such an individual

with unskilled work experience is determined not to be disabled.[4]
However, if plaintiff's age had been classified as "closely
approaching advanced age," Rule 201.09 of the Guidelines would
direct a finding of "disabled."  Because plaintiff's age at the
time of the ALJ's decision placed her "in a borderline situation"
with respect to application of the Guidelines, see 20 C.F.R. §§
404.1563(b), 416.923(b), the ALJ was required to consider whether
plaintiff met the requirements of being classified as "closely
approaching advanced age."  The ALJ failed to do so, however, and
such failure was error.

Under the Guidelines, three age categories are specified:
a younger person (under age 50), a person closely approaching
advanced age (age 50-54), and a person of advanced age (age 55 or
older).   20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e).   In a
borderline situation, however, the age categories are not to be
applied mechanically.   20 C.F.R. §§ 404.1563(b), 416.963(b);
Phillips, 671 F.3d at 702.  Instead, if a claimant is

> within a few days to a few months of reaching
> an older age category, and using the older age
> category would result in a determination or
> decision that [the claimant is] disabled, [the
> Commissioner] will consider whether to use the
> older age category after evaluating the
> overall impact of all the factors of [the

_____

[4]Although not relevant to the instant discussion, the ALJ
properly elicited testimony from a vocational expert in order to
meet the Commissioner's burden at Step 5 inasmuch as plaintiff
was found to have significant non-exertional impairments.
Pearsall, 274 F.3d at 1219-20.

claimant's] case.

20 C.F.R. §§ 404.1563(b), 416.963(b).

The Commissioner is directed to "use each of the age categories that applies to [a claimant] during the period for which [the Commissioner] must determine if [the claimant is] disabled."  20 C.F.R. §§ 404.1563(b), 416.963(b).

Plaintiff's birth date is January 10, 1962.  At the time of the ALJ's decision, that is, November 25, 2011, plaintiff was less than two months from attaining age fifty and, as such, was less than two months from being a person "closely approaching advanced age" under the Regulations.  Cf. Phillips, 671 F.3d at 703 (court of appeals looked to plaintiff's age at the time of the ALJ's decision); *Application of the Medical-Vocational Guidelines in Borderline Age Situations*, Soc. Sec. Admin., Office of Hearings and Appeals, Hearings, Appeals, and Litigation Law Manual (HALLEX) II-5-3-2, *available at* http://www.ssa.gov/OP_Home/hallex/II-05/ II-5-3-2.html (hereinafter "HALLEX II-5-3-2") (apply whenever age category changes within a few months after the date of the ALJ's decision).  As noted above, application of Rule 201.09 of the Guidelines would dictate that plaintiff be determined disabled if plaintiff were to be considered a person closely approaching advanced age.  In circumstances where, as here, the claimant's age is within a few months of a higher age category and using the higher age category would result in a decision of "disabled," "a

- 10 -

borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age." HALLEX II-5-3-2.

To decide which age category to use, the Commissioner is instructed to take a "sliding scale" approach whereby "the claimant must show progressively more additional vocational adversity(ies) — to support use of the higher age — as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." HALLEX II-5-3-2 (quoted in Phillips, 671 F.3d at 702.) Examples of "additional vocational adversities" include "the presence of an additional impairment(s) which infringes upon . . . a claimant's remaining occupational base[.]" Id. Where a claimant establishes at least one additional vocational adversity, the Commissioner must consider applying the next age category, and the ALJ's written decision must demonstrate that such consideration was made. Phillips, 671 F.3d at 704, 707. Substantial evidence must support the ALJ's age-category decision. Id. at 707.

Here, there is no question that plaintiff was within a few months of the higher age category at the time of the ALJ's decision and that using the higher age category would result in a decision of "disabled" under the Guidelines. Because additional vocational adversities are present in this cause, namely, the presence of additional and significant non-exertional impairments

- 11 -

which infringe upon plaintiff's occupational base, as determined by
the plaintiff's RFC and as testified to by the vocational expert,
the ALJ was required to consider whether plaintiff should be
classified as a person "closely approaching advanced age."  The
ALJ's decision here, however, is silent as to whether such
consideration was made.  Indeed, the face of the decision itself
reveals the ALJ's error inasmuch as she applied the age category
only for the date of the alleged onset of disability and did not
consider plaintiff's age on the date of the decision.  20 C.F.R. §§
404.1563(b), 416.923(b); HALLEX II-5-3-2.  The ALJ's silence leaves
this Court unable to determine if the Commissioner considered
whether plaintiff should be moved to the higher age category.  As
such, substantial evidence does not support the Commissioner's
decision.  Phillips, 671 F.3d at 707 (and cases cited therein).

**V.  Other Claims**

A.  Weight Accorded to Opinion of Single Decision-Maker

Plaintiff claims the ALJ erred by improperly according
weight to the opinion of Bonnie Young, a non-medical single
decision-maker with disability determinations.  A review of the
ALJ's decision shows plaintiff's claim to be without merit.

In her decision, the ALJ cited to Exhibit 10F of the
administrative record and stated that she generally accepted the
opinions of state agency consultants inasmuch as they were
supported and consistent with objective medical evidence of record.

(Tr. 18.)   The only evidence contained within Exhibit 10F is a
Mental RFC Assessment completed by Dr. Kyle DeVore, Ph.D.   (Tr.
413-15.)   Indeed, the ALJ specifically discussed Dr. DeVore's
opinion in her decision.   (Tr. 16-17.)   Nowhere in the ALJ's
decision does the ALJ refer to Ms. Young, any of Ms. Young's
findings, or cite to Ms. Young's assessment.   The undersigned
cannot find, therefore, that the ALJ improperly considered Ms.
Young's non-medical opinion in determining plaintiff's RFC.

B.   Evaluation of Opinion Evidence

        Plaintiff claims that the ALJ erred by discounting the
August 2011 opinion of James Owens, MSW, ICCDP (Tr. 482-87) and the
July 2011 opinion of Dr. Gina Smith (Tr. 481).   A review of the
record as a whole shows the ALJ to have properly considered such
opinions and to have accorded them appropriate weight in accordance
with the Regulations.   20 C.F.R. §§ 404.1527(d), 416.927(d).[5]

        With respect to Mr. Owens, the record shows plaintiff to
have visited him on one occasion, August 1, 2011, and that he
completed a checklist Mental RFC Questionnaire that same date in
which he reported plaintiff's mental impairments to cause
significant limitations which would preclude unskilled work.   When
asked to provide explanations for such limitations, Mr. Owens

_____

        [5]Citations to 20 C.F.R. §§ 404.1527 and 416.927 are to the
2011 version of the Regulations which were in effect at the time
the ALJ rendered the final decision in this cause.   This
Regulation's most recent amendment, effective March 26, 2012,
reorganizes the subparagraphs relevant to this discussion but
does not otherwise change the substance therein.

repeatedly wrote "unknown." (Tr. 482-87.) The ALJ considered Mr. Owens' opinion but determined to accord it minimal weight "since he is not an acceptable medical source and he has had little contact with the claimant." (Tr. 17.) Substantial evidence supports the ALJ's reasons. See Social Security Ruling 06-3p, 2006 WL 2263437 (Soc. Sec. Admin. Aug. 9, 2006) (factors for considering opinion evidence from "other medical sources" include how frequently source has seen the individual, the degree to which the source presents relevant evidence to support the opinion, and how well the source explains the opinion) (quoted in Sloan v. Astrue, 499 F.3d 883, 889 (8th Cir. 2007)); Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (vague and conclusory checklist assessments have limited evidentiary value).

To the extent plaintiff relies on Shontos v. Barnhart, 328 F.3d 418 (8th Cir. 2003), and argues that the ALJ should have accepted Mr. Owens' opinion as a treating source's opinion inasmuch as he was part of plaintiff's "treatment team," plaintiff's argument is misplaced. Unlike the circumstances in Shontos, the evidence here does not show that plaintiff was provided a "team approach" with respect to her mental health treatment or that Mr. Owens, as a part of this purported "team," saw plaintiff on more than just the one occasion. Contra Shontos, 328 F.3d at 426 (multiple providers each saw plaintiff on multiple occasions as part of a treatment team and could provide longitudinal perspective

of claimant's impairment).

With respect to the July 2011 opinion of Dr. Smith, the undersigned notes that such opinion consisted of a one-page Medical Certificate to Return to Work in which she wrote:  "Ms. Lewis is disabled in my opinion due to Depression/Anxiety/Chronic Knee/Foot and Back Pain/ Type II [Diabetes Mellitus]—uncontrolled with some evidence of neuropathy." (Tr. 481.)  The ALJ accorded this opinion minimal weight inasmuch as statements that a claimant is disabled "are not medical opinions, but administrative findings dispositive of a case[.] . . . Such issues are reserved to the Commissioner to determine the ultimate issue of disability." (Tr. 17.)  The ALJ did not err in this determination.  See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (opinions that a claimant is disabled is not a medical opinion but instead is an issue reserved to the Commissioner); Ellis v. Barnhart, 392 F.3d 988, 994-95 (8th Cir. 2005) (medical source's opinion that claimant is unable to work involves an issue reserved for the Commissioner and is not the type of opinion which the Commissioner must credit).

Plaintiff also claims that the ALJ erred by failing to acknowledge and thus accord any weight to the March 2010 opinion of psychologist Dr. Carmen Curtis.  For the following reasons, plaintiff's argument is well taken.

On March 8, 2010, Dr. Curtis conducted a consultative psychological evaluation of plaintiff for disability

- 15 -

determinations.   (Tr. 349-56.)   Upon the conclusion of the evaluation, Dr. Curtis opined that plaintiff had moderate impairments in the domain of Activities of Daily Living and in the domain of Appearance and Ability to Care for Personal Needs; and moderate to severe impairments in the domain of Social Functioning and in the domain of Concentration, Persistence or Pace.   Dr. Curtis diagnosed plaintiff with Major Depressive Disorder, Panic Disorder without Agoraphobia, and Post Traumatic Stress Disorder and assigned plaintiff a Global Assessment of Functioning (GAF) score of 56.[6]   In her written decision, the ALJ did not acknowledge or address Dr. Curtis's March 2010 evaluation or the opinions expressed therein.

In evaluating opinion evidence, the Regulations require the ALJ to explain in the decision the weight given to any opinions from treating sources, non-treating sources and non-examining sources.   20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).   The ALJ here wholly failed to comply with the Regulations with respect to Dr. Curtis's opinions.   Although an ALJ is not required to explain all the evidence of record, Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000), she nevertheless cannot merely "pick and

---

[6]A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness."  Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed. 2000).  A GAF score of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

[choose] only evidence in the record buttressing [her] conclusion." Taylor o/b/o McKinnies v. Barnhart, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004), and cases cited therein.

> The ALJ may have considered and for valid reasons rejected the . . . evidence proffered . . . ; but as [she] did not address these matters, we are unable to determine whether any such rejection is based on substantial evidence.  Initial determinations of fact and credibility are for the ALJ, and must be set out in the decision; we cannot speculate whether or why an ALJ rejected certain evidence. Accordingly, remand is necessary to fill this void in the record.

Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995) (citation omitted).

The Commissioner argues that the ALJ was not required to consider the opinions of Dr. Curtis inasmuch as such opinions were obtained in March 2010, which was "well before" the alleged disability onset date of August 17, 2010, and were obtained in relation to plaintiff's previous applications for benefits. (Deft.'s Brief, Doc. #20 at p. 10.)  The Commissioner's argument is without merit.  Medical records which pre-date the relevant period of disability and relate to conditions existing during the relevant period must be considered by the Commissioner in determining disability.  Cunningham v. Apfel, 222 F.3d 496, 501-02 (8th Cir. 2000).  "The timing of an examination is not dispositive of whether evidence is material[.]"  Id. at 502.  Plaintiff's history of mental impairments before her alleged disability onset date may

- 17 -

support her claim that such impairments were disabling during the relevant period.  Id.

Upon remand, the Commissioner shall consider all the relevant evidence of record relating to plaintiff's impairments, including opinion evidence obtained from Dr. Curtis which pre-dated plaintiff's alleged onset date of disability by five months.

C.   Obesity

Plaintiff claims that the ALJ failed to properly consider plaintiff's impairment of obesity.  Plaintiff's claim is without merit.

"Obesity is a complex, chronic disease characterized by excessive accumulation of body fat."  Social Security Ruling 02-1p, 2000 WL 628049, at *2 (Soc. Sec. Admin. Sept. 12, 2002). Guidelines published by the National Institutes of Health (NIH) establish medical criteria for the diagnosis of obesity, including a classification that a BMI of 30.0 or above constitutes "obesity." Id.  "'[E]xtreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40."  Id.

The record establishes, and the defendant Commissioner does not dispute, that plaintiff suffers from obesity.  Although obesity is no longer, in itself, a listed impairment, see SSR 02-1p, 2000 WL 628049, at *1, the Social Security Regulations specifically instruct that the cumulative effects of obesity must

be considered with a claimant's other impairments.  As specifically
applicable in this case, § 1.00(Q) of the Listings requires that
obesity be considered in cumulation with impairments of the
musculoskeletal system:

> Obesity is a medically determinable impairment
> that is often associated with disturbance of
> the musculoskeletal system, and disturbance of
> this system can be major cause of disability
> in individuals with obesity.  The combined
> effects of obesity with musculoskeletal
> impairments can be greater the effects of
> each of the impairments considered separately.
> Therefore, when determining whether an
> individual with obesity has a listing-level
> impairment or combination of impairments, and
> when assessing a claim at other steps of the
> sequential evaluation process, including when
> assessing an individual's residual functional
> capacity, adjudicators *must* consider any
> additional and cumulative effects of obesity.

20 C.F.R. 404, Subpt. P, App. 1, § 1.00(Q).  (Emphasis added.)

As such, an ALJ errs when she fails to consider the impact of a
claimant's obesity on her ability to perform work.

Here, the ALJ determined plaintiff's obesity to
constitute a severe impairment and thoroughly discussed the impact
such impairment, in combination with plaintiff's musculoskeletal
and other impairments, had on plaintiff's ability to perform work-
related functions.  (Tr. 11-12, 15-16.)  Because the ALJ
specifically took plaintiff's obesity into account when evaluating
plaintiff's impairments and their effect on plaintiff's ability to
perform work-related functions, plaintiff's claim that the ALJ

- 19 -

failed to consider her obesity must fail.  Heino v. Astrue, 578
F.3d 873, 881-82 (8th Cir. 2009).

D.   Symptoms of Anemia

          Finally, plaintiff claims that the ALJ failed to properly
consider plaintiff's symptoms of anemia, and specifically, symptoms
of headaches, fatigue, irritability, low hematocrit levels, and
poor concentration.  As noted above, the ALJ determined plaintiff's
anemia  and  headaches  to  constitute  severe  impairments  and
considered  the  effect  such  impairments  had  on  her  ability  to
perform work-related functions.  Although plaintiff claims that she
endorsed each of these symptoms (Pltf.'s Brief, Doc. #15 at p. 17),
objective  medical  evidence  of  record  shows  only  that  plaintiff's
headaches  and  low  hematocrit  levels  were  associated  with  her
diagnosed condition of anemia.  (Tr. 431-35, 440.)  The ALJ did not
err  in  her  consideration  of  plaintiff's  severe  medically
determinable impairments.

## VI.  Conclusion

          For all of the foregoing reasons, substantial evidence
does not support the Commissioner's classification of plaintiff as
a "younger individual" in her consideration of whether plaintiff
meets the disability criteria of the Medical-Vocational Guidelines.
Nor is the Commissioner's mental RFC determination supported by
substantial evidence inasmuch as the ALJ failed to consider all the
relevant evidence of record relating to plaintiff's severe mental

- 20 -

impairments.   Accordingly, the Commissioner's decision should be reversed and remanded for further consideration.

Therefore,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and this cause is **REMANDED** to the Commissioner for further proceedings.

Judgment shall be entered accordingly.


_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE


Dated this  _27th_  day of March, 2013.

- 21 -